**Michael J. DERICKSON, Sr., Plaintiff,**

v.

**FIDELITY LIFE ASSOCIATION, Defendant.**

**No. 4:94CV112 TIA.**

United States District Court, E.D. Missouri, Eastern Division.

March 13, 1995.

Robert J. Radice, Cockriel and Horas, St. Louis, MO, for Michael J. Derickson, Sr.

Karen A. Menghini, Armstrong and Teasdale, St. Louis, MO, for Federal Kemper Life Assurance Company and Fidelity Life Assoc.

*MEMORANDUM AND ORDER*

ADELMAN, United States Magistrate Judge.

This matter is before the Court on the parties' briefs and oral arguments regarding defendant's Motion for Summary Judgment. The parties consented to try their case before the undersigned pursuant to 28 U.S.C. § 636(c).

This case involves a dispute over defendant's failure to pay on a life insurance contract. Christopher Derickson applied for life insurance with defendant on September 30, 1992. It is undisputed that Christopher Derickson signed the application, which contained a statement that his driver's license had not been suspended or revoked in the three years prior to his application. In fact, Christopher's license had been suspended nine times and revoked four times during that period.

Defendant issued a life insurance policy, number FL0411249, to Christopher Derickson on December 18, 1992 in the amount of $50,000.00. Michael S. Derickson, Christopher's father and the plaintiff in this action, was named as the primary beneficiary.

Christopher Derickson died in a one-car automobile accident on April 13, 1993 when the vehicle he was driving crossed the centerline of the road and hit several parked cars and a metal railing. Plaintiff sought

payment on Christopher's life insurance policy on May 12, 1993. Defendant investigated the claim, and the investigation revealed that the statement on the application regarding Christopher's driving record had been inaccurate. Defendant denied payment on the policy based on a determination that the matter misrepresented by the decedent in his application was causally connected to his cause of death.

### Standard for Ruling on Summary Judgment

A court may grant summary judgment if the pleadings, admissions, depositions, and affidavits show no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The court must view all facts and inferences in the light most favorable to the non-moving party. *Portis v. Folk Constr. Co.*, 694 F.2d 520, 522 (8th Cir.1982). The burden of proof is on the moving party to show an absence of any genuine issue of material fact. *Foster v. Johns–Manville Sales Corp.*, 787 F.2d 390, 392, (8th Cir.1986). Once the moving party demonstrates that there is no genuine issue of material fact, the burden shifts to the adverse party to establish a genuine issue for trial. Fed.R.Civ.P. 56(e); *Brown v. Trans World Airlines, Inc.*, 746 F.2d 1354, 1358–59 (8th Cir.1984).

The Supreme Court has noted that: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action'." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). Thus, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'." *Id.* at 587, 106 S.Ct. at 1356. The Eighth Circuit has acknowledged that the "trilogy of recent Supreme Court opinions" demonstrates that the courts should be "more hospitable to summary judgments than in the past" and that a motion for summary judgment "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those cases that really do raise genuine issues of material fact." *City of Mt. Pleasant, Iowa v. Associated Electric Cooperative, Inc.*, 838 F.2d 268, 273 (8th Cir.1988).

### Discussion

Mo.Rev.Stat. § 376.580 provides that

[n]o misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this state, shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case shall be a question for the jury.

Naturally, the parties disagree over whether the inaccurate statement on the insurance application regarding the decedent's driving record actually contributed to his death. Defendant asserts that summary judgment is appropriate because Christopher Derickson withheld information indicating that he was a reckless driver and that his reckless driving caused his death. While plaintiff admits that summary judgment may be appropriate in some cases arising under § 376.580, he argues that the question of contribution must be given to the jury in this case. Specifically, plaintiff contends that there is no evidence that Christopher was speeding or driving recklessly, and that a jury could find that the misrepresentation about his driving record did not contribute to his death.

The Court finds *U.S. v. Home Life Ins. Co.*, 508 F.Supp. 559 (E.D.Mo., 1980), cited by the defendant, instructive on the issue of contribution. In *Home Life*, an insurance company denied benefits due to an insured's failure to disclose on his application that he had been treated for drug overdose. After

the insurance company issued the policy, the insured died from a self-inflicted gunshot wound. Although there were no questions on the application specifically addressing attempted suicide, the application did ask whether the applicant had ever consulted, been examined or treated by a physician or practitioner during the previous five years for any reason not already stated. The applicant provided an inaccurate response to that question, thus withholding information that would have indicated emotional instability. The court held that the matter misrepresented, (the insured's failure to reveal his emotional instability) "actually contributed to the insured's death by suicide." *Home Life,* 508 F.Supp. at 563.

Plaintiff attempts to distinguish *Home Life* by arguing that the misrepresentation in that case concealed suicidal tendencies which led to the decedent's death. In this case, plaintiff asserts, Christopher's driving record would have revealed a pattern of speeding and running stop signs, but no evidence of falling asleep at the wheel. The undersigned cannot accept the logic of plaintiff's argument. Christopher's misrepresentation concealed a habit of driving recklessly, a habit which resulted in his death. There is no dispute that Christopher's car crossed the center line and ran into several parked cars and a metal railing. Plaintiff offers no evidence that the accident could have been caused by anything but Christopher's own fault. In fact, plaintiff's own theory is that Christopher fell asleep at the wheel because he was tired after being awake all night for the birth of his child. The Court is saddened by the fact and the manner of Christopher Derickson's death. However, there are no material facts for a jury to consider in this case.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment is **GRANTED.**