**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

THOMAS WOLF; BARBARA WOLF,
Plaintiffs-Appellants,

v.

No. 96-1017

FAUQUIER COUNTY WATER AND
SANITATION AUTHORITY,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-95-864)

Argued: July 17, 1996

Decided: August 20, 1996

Before MURNAGHAN, Circuit Judge, and BUTZNER and
PHILLIPS, Senior Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Daniel M. O'Connell, Jr., O'CONNELL & MAYHUGH,
P.C., Warrenton, Virginia, for Appellants. Stephen Michael Sayers,
HUNTON & WILLIAMS, McLean, Virginia, for Appellee. **ON
BRIEF:** Arthur E. Schmalz, Cassandra C. Collins, HUNTON &
WILLIAMS, McLean, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellee, the Fauquier County Water and Sanitation Authority of Fauquier County, Virginia, sells water and sewer availabilities, or taps, permitting hookup to its water supply and sewage disposal systems. In December 1991, Appellants, Thomas and Barbara Wolf, purchased property in the County. Their predecessor in title had paid $11,200 for eight pairs of water and sewer taps and connected through them with the Authority's water and sewer systems.

After the Wolfs remodeled the property, rendering many of the eight pairs of hookups unnecessary, they asked the Authority to repurchase most of the unneeded taps, for a per-tap price equal to the price then charged by the Authority--$6,500 for each sewer tap and $5,000 for each water tap--less ten percent. After first indicating that it would repurchase the taps for a price equal to ninety percent of the price paid by the Wolfs' predecessor, the Authority took the position that it would not repurchase the taps since they had already been physically connected to the Authority's systems. It also announced that Fauquier County's regulations forbad selling taps to a third party.

The Wolfs filed a complaint in the United States District Court for the Eastern District of Virginia, claiming that the Authority had violated their substantive due process and equal protection rights and seeking $62,400 in damages. On December 22, 1995, the District Court granted the Authority's motion for summary judgment. Having reviewed the matter de novo, see Pleasant Valley Hosp. v. Shalala, 32 F.3d 67, 69 (4th Cir. 1994), we affirm.

In order to show that their substantive due process rights have been violated, the Wolfs are required to show (1) that, when they purchased the property, they acquired a property interest arising from their predecessor's purchase of the availabilities, (2) that the Author-

2

ity has deprived them of that property interest, and (3) that the Authority's actions have fallen "so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." See Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 827 (4th Cir. 1995). With respect to the first prong of that analysis, the Wolfs must show "`a legitimate claim of entitlement'" grounded in "`existing rules or understandings that stem from an independent source such as state law.'" Gardner v. City of Baltimore Mayor and City Council, 969 F.2d 63, 68 (4th Cir. 1992) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)). With respect to the third prong, the Wolfs must show that the Authority's actions were "so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." Rucker v. Harford County, Md., 946 F.2d 278, 281 (4th Cir. 1991), cert. denied, 502 U.S. 1097 (1992).

We have concluded that the Wolfs' claim fails to meet those requirements. With respect to the first element of their claim, the Wolfs have no property right arising from their predecessor's purchase of the availabilities. The County's regulations make clear that the purchase of an availability only purchases the right to connect to the County's water or sewer system; once that connection has been made, the property right has been exercised and extinguished.* Payment of an availability fee "grants the applicant the right to access the Authority's water or sewer system for up to three years after his payment date for the specific parcel(s) listed on the application." Rules and Regulations and Construction Specifications and Standards of Fauquier County, Virginia ("Rules and Regulations") § 2.8(B)(2). If the applicant "fail[s] to connect to the Authority's water or sewer system and to fully utilize the assigned availability within three years of

_____

*The Wolfs have argued that the existence of contrary testimony by their expert witness rendered summary judgment inappropriate. We find that, in light of the plain language of the County's regulations, no reasonable trier of fact could have returned a verdict in favor of the Wolfs and that summary judgment in the Authority's favor was therefore proper. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.").

3

the payment date," the Authority will revoke the applicant's right to tap into the system unless it "determines that the applicant has been proceeding diligently in good faith to complete the project and is likely to complete the project within a reasonable time." Id. § 2.8(B)(3), (4). If an availability is "unused and unconnected," the Authority will repurchase it for ninety percent of the availability fee paid by the applicant. Id. § 2.8(B)(5). Those regulations indicate that the difference between purchasing an availability and making use of the County's sewer or water system is, in a sense, the difference between opening a door and entering a room: the first is fully accomplished before the second begins.

We further find that the Authority's actions are not "so arbitrary and irrational . . . as to be literally incapable of avoidance by any predeprivation procedural protections or of adequate rectification by any post-deprivation state remedies." Rucker, 946 F.2d at 281. The Authority uses the funds it acquires by charging availability fees to pay the costs of building, maintaining, and upgrading the County's water and sewer systems. Rules and Regulations § 3.1(A). By repurchasing only "unused and unconnected" availabilities, the Authority has struck a balance between helping to mitigate the losses suffered by persons whose construction projects have been thwarted in one manner or another and maintaining the Authority's fiscal health. The Wolfs' substantive due process claim therefore fails.

The Wolfs also have contended that their equal protection rights have been violated because the Authority has agreed to repurchase availabilities from the Resolution Trust Corporation. Because the Wolfs' claim does not concern a suspect or quasi-suspect class or a fundamental right, it is governed by the "rational relation" standard of review. See Smith Setzer & Sons v. South Carolina Procurement Review Panel, 20 F.3d 1311, 1320 (4th Cir. 1994). Under that standard, any pertinent classification made by the Authority must be rationally related to a legitimate governmental interest. Id. If it is "`at least debatable'" whether the Authority could rationally have decided that the given classification would further a legitimate governmental purpose, the Wolfs' equal protection challenge must be rejected. Id. at 1323 (quoting Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 464 (1981)).

4

The same difference alluded to regarding due process applies to equal protection: unlike the availabilities purchased by the Wolfs' predecessor, the availabilities involved in the RTC case had not been connected to the County's water and sewer systems and so continued to exist. As we have indicated, we believe that the Authority could reasonably have decided that distinguishing between connected and unconnected taps was necessary in order to strike a balance between fairness and fiscal wisdom.

The District Court's decision to grant the Authority's motion for summary judgment is accordingly

AFFIRMED.