242

1100 VERMONT AVENUE ASSOCI-
ATES and Western Investment
Corporation Plaintiffs,

v.

COMMONWEALTH LAND TITLE
INSURANCE COMPANY, et al.
Defendants.

Civ. A. No. 87–3023 (TPJ).

United States District Court,
District of Columbia.

Oct. 12, 1988.

James H. Hulme, Washington, D.C., for plaintiffs.

Thomas C. Green, Washington, D.C., for defendants Sharp and Peck.

Nathan I. Finkelstein, Washington, D.C., for defendant Com.

MEMORANDUM AND ORDER

JACKSON, District Judge.

By a detailed written contract dated August 31, 1987, a four-party District of Columbia limited partnership known as 1100 Vermont Avenue Associates ("sellers") agreed to sell a parcel of Washington, D.C. real property improved by an office building on Vermont Avenue, N.W., to two New York City businessmen, Peter Sharp and Norman L. Peck ("purchasers"), for $11,-400,000. The contract called for a purchase money deposit of $500,000 to be paid in two installments and held by Commonwealth Land Title Insurance Company ("Commonwealth"), a Pennsylvania title insurer, as escrow agent, pending settlement.[1] Closing, initially scheduled for October 20, 1987, was later postponed a week by mutual consent.

Paragraph 24 of the contract provided that the deposit, as "liquidated damages," would be the sellers' "sole and complete remedy" in the event of the purchasers' default. Minutes prior to settlement on the morning of October 27th, counsel for the purchasers telephoned his opposite number, and, citing economic uncertainties arising from the stock market plunge of October 19, 1987, announced that his clients would not be tendering the balance of the purchase price. Notwithstanding, the sellers' representatives appeared at the appointed time and place, presented Commonwealth with a deed and related documents, and made a request of the purchasers, refused by their counsel, that they give instructions in writing to Commonwealth authorizing it to disburse the deposit to the sellers.

Then, being informed by Commonwealth that it would require further miscellaneous title documentation—none of it, however, signifying the presence of an actual title defect—before Commonwealth would be willing to insure the title to be passed, the sellers invoked a provision of the contract allowing either party to adjourn the closing

1. Although the contract contained elaborate terms for use of a letter or letters of credit, or U.S. government bonds, as an alternative to cash for the deposit, *see* Contract, Para. 3, the deposit was duly paid to Commonwealth in cash.

for three business days. On October 30th, with title as it was to be insured now appearing of record, the scene of three days earlier was repeated. The sellers tendered again; the purchasers refused to do likewise, and this lawsuit to determine rights to the deposit ensued. Jurisdiction in this court is predicated upon the parties' diversity of citizenship.

The case is presently before the Court on cross-motions for summary judgment.[2] The plaintiff-sellers ask payment of the deposit to them, as liquidated damages, a forfeiture, or both. The defendant-purchasers seek return of the deposit to them as the remnant of a failed contract, on the ground that the sellers' purported tenders of performance were both defective. Judgment will be given for the plaintiff-sellers.[3]

The defendant-purchasers do not dispute that they refused to settle on October 27th and again on October 30th. They say that had the plaintiff-sellers themselves forthwith "certified" to the escrow agent their right to forfeit the deposit, in writing, a procedure mentioned in Paragraph 4(ii) of the contract, without attempting to make a tender of performance, the matter would have been accomplished. As it was, the purchasers contend, the sellers "elected" to continue the contractual relationship, then failed on two occasions to make good on their own tender of performance, thus excusing, after the fact, the purchasers' anticipatory repudiation of the contract.

Whether in the form of a "certification" or not, however, it is obvious that the sellers did, in effect, demand precisely the relief the purchasers now concede they were entitled to when their right to it first arose. Within the hour they were first informed that the purchasers declined to go through with the transaction, in the presence of the escrow agent, the sellers' attorney formally asked the purchasers' attorney to have the escrow agent instructed in writing by the purchasers to pay over the deposit to the sellers. The request, as noted, was refused.

Subparagraph (ii) of Paragraph 4 ("THE ESCROW"), the provision of the contract upon which the purchasers rely, calls for the escrow agent to "deliver the proceeds of [any] letter(s) of credit constituting the Deposit" to the sellers if they should "certify" their right to it, with a "copy" of the "certification" being sent to the purchasers. The provision clearly contemplates a procedure applicable upon an alleged default by the purchasers which occurs without the presence of the sellers and the escrow agent. In the event, a written "certification" from the sellers was unnecessary, because counsel for the purchasers acknowledged his clients' default in person, albeit orally, in the hearing of the escrow agent. He then declined a request to confirm it in writing by authorizing the escrow agent to "deliver the proceeds of ... the Deposit" to the sellers. Written "certification" from the sellers, in such circumstances, would have been a useless formality.

That the sellers' attorney also did not, in so many words, speak of the payment he sought as a "forfeiture" is neither surprising nor of consequence. The contract itself does not use the term. Paragraph 24 of the contract, entitled "REMEDIES," refers to the sellers' "remedy," upon the purchasers' default, as "liquidated damages," avoiding mention of the word "forfeiture" altogether.

Confronted thus with obdurate purchasers, willing neither to perform nor to admit that the agreed-upon remedy for their non-performance could be given (and, of course,

---

**2.** Although the purchasers, out of caution, suggest it may be otherwise, as the cross-motions themselves demonstrate the material facts are not in issue. The record consists of the transaction documents and affidavits of the lawyers who were the primary actors in the drama—the principals having made no appearances—and the substance of the case emerges clearly enough for the Court to conclude that summary adjudication is appropriate. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**3.** On May 2, 1988, Commonwealth's motion for interpleader was granted, and it paid the deposit, plus interest, minus its costs, into the Registry of the Court on May 16, 1988. The sellers and purchasers were ordered to interplead their claims to the resulting sum of approximately $518,000.

with an escrow agent fully aware it was caught in the middle as well), the sellers proceeded with their ritual tender of performance, if only to manifest that they were, in fact, ready, willing, and able to perform themselves.

The objections purchasers make to the sellers' tendered performance are without merit. They relate primarily to the escrow agent/title insurer's insistence upon the recordation of certain recitations and amendations which would display title to be good of record, although in retrospect, it is obvious title, was, and had at all times been, so in fact. The remaining objections derive in major part from the purchasers' own failure to deliver those conveyancing and settlement instructions to the sellers and the escrow agent which could only have emanated from them. To the extent sellers' tender may have been in any particular less than to the letter of their promised performance the deficiencies were insubstantial to a point approaching *de minimis*.[4]

Although the cases may be dated, and somewhat perfunctory as well, it is clear that the law of the District of Columbia has long recognized a seller of real property to be entitled to a purchase money deposit in the circumstances presented here. *See Harrington v. Heaney,* 101 A.2d 838 (D.C. Mun.App.1953); *Butler v. Myers,* 178 A.2d 916 (D.C.Mun.App.1962). Accordingly, it is, this 12th day of October, 1988,

ORDERED, that defendant-purchasers' motion for summary judgment is denied; and it is

FURTHER ORDERED, that plaintiff-sellers' motion for summary judgment is granted, and the Clerk of the Court is directed to deliver the sum presently on deposit in the Registry of the Court in accordance with the Order of May 2, 1988, herein, together with interest accrued thereon, by a check made payable as the sellers may by praecipe direct.

---

4. The purchasers, moreover, unlike the sellers, retained their rights to specific performance or damages for a less-than-substantial breach not justifying recission. *See* Contract, Para. 24.