**Benny ESKENAZI, Plaintiff,**

**v.**

**FEDERAL RESERVE BANK OF NEW YORK, Defendant.**

**No. 92 Civ. 4211 (MBM).**

United States District Court, S.D. New York.

Jan. 21, 1994.

Robert P. Herzog, New York City, for plaintiff.

Joseph H. Sommer, Federal Reserve Bank of New York, New York City, for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff Benny Eskenazi brings this action alleging negligence by the defendant Federal Reserve Bank of New York ("New York

---

Fed") in handling a check that was deposited in plaintiff's bank account. Defendant moves for summary judgment, asserting that it was not negligent and contending that even if it had been negligent, plaintiff was not entitled to payment on the check. For the reasons set forth below, defendant's motion is granted.

## I.

Plaintiff resides in Santiago, Chile, where he is engaged in the currency exchange business. (Complt ¶ 1) On July 11, 1990, plaintiff received a check for $22,500 from Ilan Slachewski, who wished to convert the dollars into Chilean pesos. (Pl. Aff. ¶ 9) The check was drawn on an account at Bank Hapoalim, B.M. ("Hapoalim") and was to be paid to the order of "IDB of N. York." (Def.Ex.A) Plaintiff endorsed the check by stamping it with the following words: "PAY TO THE ORDER OF IDB OF NEW YORK FOR DEPOSIT ONLY ACCT. NO. 90–1758–9." (Def.Ex.A) He then deposited the check into his account at Israel Discount Bank ("IDB").

IDB forwarded the check to Bankers Trust Company for collection on July 16, 1990. (Def. 3(g) Stmt ¶ 10) On July 17, Bankers Trust forwarded the check to the New York Fed. (Def. 3(g) Stmt ¶ 12) It is undisputed that the New York Fed, in turn, sent the check to Hapoalim for collection. (Def. Mem. at 6; Pl. 3(g) Stmt ¶ 13(c)) On August 7 or 8, 1990, the New York Fed discovered that the check had been lost and informed Bankers Trust of the loss by issuing an Advice of Charge. (Pl. 3(g) Stmt ¶ 13; Def. 3(g) Stmt ¶ 13) On August 9, 1990, plaintiff allegedly paid Slachewski $22,500 in pesos, after having waited approximately one month for Slachewski's check to clear. (Pl. 3(g) Stmt ¶ 14)

On or before September 10, 1990, Bankers Trust submitted a photocopy of the check directly to Hapoalim for collection. (Pl. 3(g) Stmt ¶ 15; Def. 3(g) Stmt ¶ 16) It was not until September 18 that Bankers Trust informed IDB that the check had been lost. (Pl. 3(g) Stmt ¶ 16; Def. 3(g) Stmt ¶ 17) On or about October 10, 1990, Hapoalim dishonored the check because Slachewski's account had insufficient funds. (Pl. 3(g) Stmt ¶ 20; Def. 3(g) Stmt ¶ 18) On October 23, 1990, IDB charged back Eskenazi's account the sum of $22,500. (Def. 3(g) Stmt ¶ 20) Plaintiff has been unable to recover from Slachewski, and has settled his claims against IDB, Bankers Trust and Hapoalim.

## II.

Defendant contends that it is entitled to summary judgment because 1) it acted properly; 2) plaintiff is not a holder of the check; and 3) plaintiff suffered no damages because the check was drawn upon insufficient funds. (Def.Mem. at 3) Summary judgment is appropriate if the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Because granting the motion denies the nonmoving party a trial on the merits, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Gibson v. American Broadcasting Cos.*, 892 F.2d 1128, 1134 (2d Cir.1989). Here, no genuine issue of fact exists with regard to the claim of negligence, so summary judgment is appropriate. Because defendant acted reasonably, defendant's motion for summary judgment is granted. Accordingly, this opinion does not address whether plaintiff was a holder, or whether plaintiff suffered damages as result of the New York Fed's conduct.

## III.

Banks are obligated to exercise ordinary care in the handling of checks during the collection process. *See* N.Y.U.C.C. § 4–202(1) (McKinney 1991). Section 4–202(1)(e) of the U.C.C. specifically states that "a collecting bank must use ordinary care in ... notifying its transferor of any loss or delay in transit within a reasonable time after discovery." In defining "ordinary care," Article 4 of the U.C.C. provides:

> Action or non-action approved by this Article or pursuant to Federal Reserve regulations or operating letters constitutes the exercise of ordinary care and in the ab-

sence of special instructions, action or non-action consistent with clearing house rules and the like or with a general banking usage not disapproved by this Article, prima facie constitutes ordinary care.

N.Y.U.C.C. § 4–103(3) (McKinney 1991). Thus, if the New York Fed can show that it acted in conformity with Federal Reserve regulations or general banking practices, then it will have provided sufficient proof that it exercised ordinary care. The burden then shifts to plaintiff to rebut this showing. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986).

Defendant offers an affidavit from Fred Denesevich, an officer of the New York Fed holding the position of "Regional Check Manager." He states that 30 days is a reasonable amount of time to conduct a lost check inquiry, and that, in the banking community, the research involved generally takes 30 days or more. (Denesevich Aff.) Because defendant acted within 30 days of the earliest possible date of notification, July 17, it contends that its actions were reasonable and within the time allowed by ordinary banking practices. (Def.Mem. at 15)

Plaintiff, in response, offers nothing to dispute defendant's showing of ordinary care. Plaintiff merely contends that the New York Fed received the check from Bankers Trust on July 17, 1990, and neglected to send the Advice of Charge to Bankers Trust until August 8, 1990. These facts, in themselves, fail to show negligence on the part of defendant. Plaintiff has not offered any proof that the New York Fed did not act reasonably in dealing with the lost check.

Plaintiff contends that Mr. Denesevich's statements "contradict New York Fed's own operating circulars and regulations as well as the Uniform Commercial Code of the State of New York." (Pl.Aff. ¶ 25) He cites Regulation CC, *see* 12 C.F.R. § 229, and Article 4 of the U.C.C. to support the proposition that the New York Fed was required to notify Bankers Trust of any problem with the check before a "midnight deadline" on the day after the New York Fed received the check. (Pl. Mem. at 7–10) However, the specific time frames prescribed by Article 4 and Regulation CC apply only to the *return* of checks, not to notifications that a check is lost. *See* N.Y.U.C.C. § 4–302(a); 12 C.F.R. § 229.30. When a check is to be returned, time is of the essence because the bank must make a reasonable effort to "prevent a withdrawal against a dishonored check." *United States Fidelity and Guar. Co. v. Federal Reserve Bank,* 590 F.Supp. 486, 497–98 (S.D.N.Y. 1984). Here, the Federal Reserve Bank never dealt with a return. The uncollectibility of the check was not disclosed until two months later, in the course of direct dealings between Bankers Trust and Hapoalim. (Pl. 3(g) Stmt ¶ 20; Def. 3(g) Stmt ¶ 18)

With the Denesevich affidavit, the New York Fed provides evidence that it acted reasonably under the circumstances presented by a lost check. The reasonableness of its conduct is buttressed by dicta in *United States Fidelity and Guaranty Co. v. Federal Reserve Bank,* 620 F.Supp. 361, 364 n. 4 (S.D.N.Y.1985):

> Banks are never actually notified when a check which has been deposited with them is paid by or "clears" the payor bank. Therefore, before releasing funds against a suspect check banks commonly hold the check for the number of days which experience has taught them will be required for the check to reach the payor bank and for that bank to inform them if the check is uncollectible. If no word arrives in this time, it is assumed that the check has been paid.

Because defendant initially received no word about the check from Hapoalim, it justifiably could have assumed that the check had been paid. Under these circumstances, it would be unrealistic to expect the New York Fed to contact Bankers Trust about the lost check before the next day's "midnight deadline."

■ Plaintiff asserts that the New York Fed had notice that there was a problem when Hapoalim first failed to make payment on the check. (Pl.Mem. at 13) According to plaintiff, defendant should have acted promptly to investigate or to notify Bankers Trust when defendant did not immediately receive a credit for the check from Hapoalim. (Pl.Mem. at 13) However, with the New York Fed allegedly processing 8 million

items a day, (Def.Rep. at 3) failure of payment alone, with no express notification from the payor bank, does not constitute notice of a problem. Moreover, even if plaintiff could prove that the New York Fed had notice, plaintiff has not offered any evidence that the New York Fed acted unreasonably. There is simply no proof whatsoever that the 15 business days that elapsed between the New York Fed's receipt of the check and its issuance of an Advice of Charge to Bankers Trust constituted an unreasonable length of time for dealing with a lost check.

It also bears mention that plaintiff has failed to adequately establish the causation element of a negligence claim. Plaintiff does contend that "[h]ad New York Fed taken any action whatsoever (even within 10 days of its mid-night deadline) to notify Plaintiff or the other banks in the collection process that there was a problem with the Check, then the loss would have been prevented." (Pl.Mem. at 6) However, it is undisputed that after the New York Fed informed Bankers Trust of the check's loss on August 7 or 8, Bankers Trust did not inform IDB of the problem until September 18, over a month later. (Pl. 3(g) Stmt ¶ 16; Def. 3(g) Stmt ¶ 17) IDB, plaintiff's bank, could not have notified plaintiff of the problem until it had learned of the loss from Bankers Trust. Thus, even if defendant had met a midnight deadline and informed Bankers Trust of the problem on July 18, the one-month delay caused by Bankers Trust still would have prevented plaintiff from learning of the problem in time to avoid paying Slachewski on August 9.

For the reasons discussed above, plaintiff has failed to raise a triable issue of fact regarding his negligence claim. Defendant's motion for summary judgment is granted.

SO ORDERED.