**Judee K. AXELSEN, Plaintiff,**

v.

**HILLSBORO UNION HIGH SCHOOL DISTRICT NO. 3, et al., Defendants.**

**Civ. No. 94–542–JO.**

United States District Court, D. Oregon.

July 17, 1995.

James E. McCandlish, Mark Edward Griffin, Griffin & McCandlish, Portland, OR, for plaintiff.

Peter R. Mersereau, Mersereau & Shannon, Portland, OR, for defendants.

*OPINION AND ORDER*

ROBERT E. JONES, District Judge:

Plaintiff Judee Axelsen, a former principal of Brown Junior High School in Hillsboro, Oregon, brings this action against defendant Hillsboro Union High School District No. 3 ("District"), the District superintendent, several individual school board members, and two assistant superintendents pursuant to 42 U.S.C. § 1983. Plaintiff alleges that in connection with the termination of her employment as principal in June 1992, the defendants violated her rights to due process and liberty under the Fifth and Fourteenth Amendments to the United States Constitution.

The case is before me on defendants' motion for summary judgment (# 22). After considering the parties' arguments and the evidence submitted, defendants' motion is DENIED IN PART and GRANTED IN PART.[1]

## FACTS

Plaintiff was employed by the District as a "building principal" from July 1, 1989, until June 30, 1992. The parties evidently agree that during those three years, at least until April 1, 1992, plaintiff was a probationary employee.

In February and March 1992, plaintiff received performance evaluations. Both evaluations identified "performance deficiencies" related to plaintiff's management style. Following the February 1992, evaluation, plaintiff was placed on a plan of assistance, to "assist [her] in correcting the performance deficiencies" described in the plan. The plan of assistance set forth certain "improvement targets" for plaintiff to meet, and established dates for an interim evaluation (March 15, 1992) and a final evaluation (June 15, 1992).

By March 30, 1992, plaintiff was aware that the District was considering terminating her employment and through her attorney, she was negotiating the terms of a resigna-

---

1. Defendants have also moved to strike certain of plaintiff's exhibits (# 32). Because the rationale for my decision does not depend on those exhibits, defendants' motion is DENIED as MOOT.

Defendants may raise any appropriate objections to the exhibits by way of pretrial motion or at trial.

tion agreement. The District Board met in executive and open sessions on March 30, 1992, but the minutes of those sessions do not demonstrate any action the Board may have taken or discussion it may have had concerning plaintiff. Apparently the District did not send plaintiff a written notice of renewal or nonrenewal of her contract by April 1, 1992, as required by O.R.S. 342.513(1) and 342.835(2).

Plaintiff states in her affidavit that on April 6, 1992, she learned that she would be removed as Brown's principal after the 1991–1992 school year. Plaintiff claims that certain staff members at Brown waged a campaign against her and celebrated when they learned that she would be removed.

On April 24, 1992, Nancy Hungerford, an attorney representing the District, wrote to plaintiff's attorney and informed him that unless plaintiff signed a resignation before May 5, 1992, the superintendent intended to recommend to the Board at its May 5 meeting that she be dismissed effective at the end of the 1991–1992 school year. The letter also stated that if plaintiff refused to resign, she would be provided an opportunity for a pre-termination hearing before the Board's executive session on May 5.

Plaintiff did not resign, and she and her attorney appeared at the pre-termination hearing and argued against dismissal. On May 21, 1992, the Board voted to accept the superintendent's recommendation to dismiss plaintiff, effective June 30, 1992. The Board informed plaintiff of its decision by a memorandum dated May 22, 1992. The memorandum specified the reason for her dismissal as "fail[ure] to meet Principal performance target 7.5: 'Effectively resolves conflicts at the school level,'" and referred to specific examples of performance deficiencies noted in the plan of assistance.

Plaintiff was relieved of her duties as principal in May 1992, and terminated on June 30, 1992. Since termination, plaintiff asserts she has been unable to find employment in her chosen profession as a school administrator.

Plaintiff's complaint alleges, in essence, two claims [2] arising out the above events: (1) deprivation of her property interest in continued employment without due process; and (2) violation of her right to liberty. Defendants seek summary judgment on all claims.

## STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge,* 865 F.2d 1539, 1542 (9th Cir.1989).

The substantive law governing a claim determines whether a fact is material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *T.W. Elec. Service,* 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

## DISCUSSION

I. *Plaintiff's Due Process Claim*

The Fourteenth Amendment protects against the deprivation of property or liberty without due process. *See, e.g., Brady v. Gebbie,* 859 F.2d 1543, 1547 (9th Cir.1988). An employee has a protected property interest in continued employment only if the employee has a "reasonable expectation or a 'legitimate claim of entitlement' to it, rather

2. Although the complaint contains three "causes of action," I agree with defendants that only two

claims actually are alleged.

than a mere 'unilateral expectation.'" *Brady*, 859 F.2d at 1547–48, *quoting Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). As explained in *Brady*, whether an Oregon public employee has a property interest in continued employment depends on state law:

> A legitimate claim of entitlement arises if it is created by "existing rules or understandings that stem from an independent source such as state law." ... Thus, "[s]tate law defines what is and what is not property" that is subject to the due process clause of the Fourteenth Amendment. *Brady*, 859 F.2d at 1548 (citations omitted).

*See also Trivoli v. Mult. Co. Rural Fire Protection*, 74 Or.App. 550, 554, 703 P.2d 285 (1985) ("The existence of a property interest in public employment is determined by reference to state law"). Under Oregon law, a probationary teacher does not have a property interest in his or her job, "at least in the absence of a contract giving the teacher greater rights than does the statute." *Maddox v. Clackamas Cty. Sch. Dist. No. 25*, 51 Or.App. 639, 643, 626 P.2d 924 (1981), *aff'd as mod.*, 293 Or. 27, 643 P.2d 1253 (1982).

Defendants argue that plaintiff's due process claim fails as a matter of law because as a probationary employee, she had no protected property interest in continued employment beyond June 30, 1992, the expiration of her probationary period. Defendants further argue that even if plaintiff was entitled to Fourteenth Amendment procedural protections, as a matter of law she was given all the process that was due under the circumstances.

Plaintiff argues that under the Oregon Fair Dismissal Law, the District's failure to notify her in writing of nonrenewal of her contract by April 1, 1992, conferred permanent teacher status upon her automatically and gave her a property interest in continued employment. She also asserts that the defendants' conduct created a reasonable expectation of continued employment. I discuss plaintiff's arguments in turn.

### A. Oregon Fair Dismissal Law.

At the outset, I note that the parties have not identified any District rules or regulations that might apply. The District is a "fair dismissal district," O.R.S. 342.815(4), and plaintiff qualifies as a "teacher" under the fair dismissal statutes. *See* O.R.S. 342.120(9) and 342.815(1). "Permanent teacher" is defined for fair dismissal purposes as:

> any teacher who has been regularly employed by a fair dismissal district for a period of not less than three successive school years and who has been reelected by the district after the completion of such three-year period for the next succeeding school year. O.R.S. 342.815(5).

A "probationary teacher," in contrast, is "any teacher * * * who is not a permanent teacher." O.R.S. 342.815(6).

A district board may dismiss a probationary teacher "at any time during a probationary period for any cause considered in good faith sufficient by the board." O.R.S. 342.835(1). Upon the teacher's request, the district board is required to provide a written copy of the reasons for dismissal and "a hearing thereon" by the board. Similarly, a district board may refuse to renew a probationary teacher's contract for any cause deemed in good faith to be sufficient, provided that notice of nonrenewal is given by April 1. O.R.S. 342.835(2). O.R.S. 342.513(1) refines the April 1 notice requirement by further requiring the district to give notice of nonrenewal in writing. If the district fails to give the required notice, "the contract shall be considered renewed for the following school year at a salary not less than that being received at the time of renewal."[3]

The Oregon Court of Appeals has interpreted O.R.S. 342.513(1) to require that the employee "actually receive a written notice of nonrenewal by the statutorily designated date." *Ambrose v. Board of Ed. of*

---

3. The automatic renewal provision is not effective unless by April 15, the teacher or administrator notifies the board in writing that the position is accepted or rejected for the following school year. O.R.S. 342.513(2). On April 13, 1992, plaintiff's attorney wrote to the District and requested a written contract for the next school year.

724

*Sch. Dist. # 17–C,* 51 Or.App. 621, 625, 626 P.2d 916 (1981) (original emphasis deleted), *citing,* among other cases, *Wallis v. Crook County School Dist.,* 13 Or.App. 174, 509 P.2d 44 (1973). No particular form of written notice is required, but "the requirement of written notice is not waived by the employee's actual notice of the board's decision not to renew." *Ambrose,* 51 Or.App. at 625. Upon the teacher's request, the district board must provide a written copy of the reasons for nonrenewal and an opportunity for a hearing.

■ In contrast to the limited rights accorded probationary teachers, permanent teachers enjoy many procedural safeguards. Permanent teachers may be dismissed only on specific grounds, *see* O.R.S. 342.865, while probationary teachers essentially may be dismissed for any reason, as long as the district acts in good faith. *Maddox,* 51 Or.App. at 641. The fair dismissal statutes establish mandatory notice and hearing requirements applicable to permanent teachers, and provide an avenue of appeal to the Fair Dismissal Appeals Board ("FDAB"). *See* O.R.S. 342.895 through O.R.S. 342.930.

■ In this case, the parties do not dispute that the District failed to notify plaintiff in writing by April 1, 1992, that her contract would not be renewed. As a result, I conclude that by operation of law plaintiff was "reelected" for the successive school year. O.R.S. 342.513(1). That, however, does not end the inquiry. The crucial issue is whether plaintiff became a "permanent teacher" after April 1, or remained a probationary teacher until she was terminated on June 30, 1992. If plaintiff achieved permanent teacher status, then whether the District satisfied the procedural requirements for dismissal presents a disputed issue of fact that must be resolved at trial.[4]

As defendants point out, in *Wesockes v. Powers Sch. Dist. No. 31,* 57 Or.App. 652, 646 P.2d 68 (1982), the Oregon Court of Appeals was faced with a situation similar to that presented here. In that case, the plaintiff, a probationary teacher in his third year, received written notice on April 1, 1981, that his contract would be renewed for a fourth year. After April 1 and shortly before the end of the school year, the defendant school district dismissed him. The teacher appealed the dismissal to FDAB, which dismissed the appeal for lack of jurisdiction on the ground that he had not attained permanent teacher status.

The court of appeals affirmed FDAB, holding that the plaintiff remained a probationary teacher during the period after April 1 to the end of the school year, which he did not complete. The court explained:

> By renewing petitioner, the school district committed itself to employ him the next year, absent some intervening grounds for dismissal. Renewal is not a guarantee against dismissal during the balance of the existing school year. ORS 342.835(1) permits the discharge of a teacher *at any time during the probationary period.* The probationary period lasts until a teacher has been "regularly employed * * * for a period of not less than three successive school years." ORS 342.815. No exception is made for the period following renewal of a third-year teacher. Thus, petitioner remained a probationary teacher after his renewal *until he completed his third year.* As such, he was subject to termination, notwithstanding the fact that he would have become permanent upon completion of the school year. 57 Or.App. at 655 (emphasis in original).

In a footnote to that discussion, however, the court noted that the 1981 Oregon Legislature had enacted O.R.S. 342.840, which provides in relevant part that:

> For purposes of determining length of service for a probationary teacher, a teacher employed for 135 consecutive days in any school year *shall receive credit for a full year of employment.* (Emphasis added.)

Because O.R.S. 342.840 was enacted after the dispute in *Wesockes* arose, the court did not address the effect of that statute on existing statutory requirements for dismissal of permanent teachers.

---

4. The evidence reflects that while the District may have satisfied the requirements for dismissal of probationary teachers, it did not follow the

fair dismissal procedures. *See Wesockes,* 57 Or.App. at 655 n. 1.

Since *Wesockes,* no Oregon appellate court has cited O.R.S. 342.840 or discussed its effect. I must, therefore, determine how an Oregon court would construe O.R.S. 342.840 if faced with the issue.

In construing an Oregon statute, the court's task is "simply to ascertain and declare what is, in terms or in substance, contained therein * * *." O.R.S. 174.010; *see also PGE v. Bureau of Labor and Industries,* 317 Or. 606, 610–11, 859 P.2d 1143 (1993). The plain language of O.R.S. 342.840 unambiguously provides that if a probationary teacher is employed by a school district for 135 consecutive days in any school year, the teacher is deemed to have completed the school year. The statute contains no limitation on that rule. Other than completing three successive school years, the only additional requirement for a probationary teacher to attain permanent status is that the district "reelect" the teacher for the "next succeeding school year." O.R.S. 342.815(5).

In support of its argument that the legislature never intended third-year probationary teachers to able to achieve permanent status during the third year, the District has submitted a letter opinion by FDAB in *York v. Portland School Dist. No. 1,* No. FDA 83–7 (Aug.1983), a case with facts similar to those presented here. In *York,* a third-year probationary teacher who had completed more than 135 days and had not been notified of nonrenewal by April 1, was dismissed shortly before the end of the 1993 school year. In a two to one decision, FDAB dismissed the teacher's appeal from the dismissal on the ground that the teacher had not achieved permanent status. The majority reasoned:

> ORS 342.840 provides that a teacher who is employed 135 consecutive days in any school year "shall receive credit for a full year of employment." * * * [W]hatever the legislature intended by the words "receive credit," it did not intend to bestow permanent teacher status on a probationary employe still serving his third year of probation who simply passed the 135–day mark and received no nonrenewal notice by the April 1st deadline. If the legisla-

ture had intended to so shorten the probationary period or to cut off the right to dismiss a probationary employe before the end of the third school year, it would have explicitly so provided. ORS 342.840 is to be applied where the third year is ended and the teacher has not been already terminated." *York,* Slip. op. at 6.

In a strongly worded dissent, the third panel member disagreed with the majority's analysis, stating:

> The majority feels that the legislature did not intend, by ORS 342.840, to cut off the right of a district to dismiss a probationary teacher as a 'probationary teacher,' while he is still in his third year. To me, this is, however, one of the things the legislature *did* intend. The language of ORS 342.840 is clear that 135 days counts as a full year. To allow an employe such as appellant, to be dismissed as a probationary employe when he has already served two full years and 185 days of his third year is to allow action by the district that defeats the clear right of an employe to have 135 days count as a full year of probationary service.

> \*  \*  \*  \*  \*  \*

> Appellant, by April 1, 1983, had completed his 135 days of service, as required for his three years of service under ORS 342.840 and 342.815(5). Consequently, the expiration of the time period for giving notice of nonrenewal, at the end of the day on April 1, 1983, constituted a renewal by operation of law at that point in time and hence a reelection (by operation of law) within the meaning of ORS 342.815(5). *York,* Slip. op. at 9–11 (dissenting opinion) (emphasis in original).

*York,* of course, is not binding precedent. I agree with the dissenting panel member in *York,* however, that the majority's analysis ignores the unambiguous language of O.R.S. 342.840, and overrides the legislature's intent in enacting it. Based on the unambiguous language of the statutes at issue, I conclude that if faced with this issue, an Oregon court would hold that a teacher who completes three successive years (by operation of law or otherwise) and who is then "reelected" for a fourth year (again by operation of law or

otherwise) achieves permanent teacher status within the meaning of O.R.S. 342.815(5), and is entitled to all of the procedural due process that permanent status entails.[5]

In response to the court's request during oral argument, the parties have submitted supplemental materials addressing the legislative history of O.R.S. 342.840. Although much of the legislative history is not helpful, essentially it shows that one of the Oregon Legislature's primary goals in enacting O.R.S. 342.840 was to put an end an apparently wide-spread practice among school districts of keeping teachers in perpetual probationary status by dismissing them before the end of one school year, and rehiring them again the next school year. The legislative history thus confirms my reading of the unambiguous language of the statute.

■■■ Turning to the facts of this case, the parties agree that plaintiff was employed by the District for 135 consecutive days in 1992. Although there is no evidence in the record concerning when she completed those 135 days, there is evidence that she started the year on July 1, 1991. Thus, she must have completed 135 days in January 1992, long before she was "reelected" on April 1, 1992. I conclude, therefore, that plaintiff attained "permanent teacher" status as defined by statute before the District dismissed her. *See* O.R.S. 342.815(5) ("any teacher who has been regularly employed * * * for a period of not less than three successive school years and who has been reelected by the district *after the completion of such three-year period*" (emphasis added)).

■■■ Because plaintiff attained permanent status, she had a protected property interest in continued employment. That plaintiff may have been aware that the District intended to

dismiss her does not diminish that property right or excuse the District from following the mandatory procedures for dismissing permanent teachers. Defendants' motion for summary judgment on plaintiff's Fourteenth Amendment due process claim is, therefore, DENIED.[6]

B. *Defendants' Conduct as Creating a "Reasonable Expectation" of Continued Employment.*

■■■ Plaintiff argues that defendants' conduct also gave her a reasonable expectation of continued employment resulting in a protected property interest. Because I have concluded that defendants' motion for summary judgment on plaintiff's due process claim must be denied because she attained permanent teacher status before she was dismissed, I need not address this issue. Nonetheless, I am compelled to comment that if plaintiff's due process claim rested solely on her allegations concerning defendants' conduct, her claim would fail as a matter of law. Under Oregon law, public employee tenure rights arise solely from statute or duly adopted regulations. In *Papadopoulos v. Oregon State Board of Higher Ed.*, 14 Or.App. 130, 511 P.2d 854 (1973), the court explained:

> [I]n Oregon, public employe tenure rights arise solely from statutes or * * * regulations adopted pursuant to a statutory delegation of authority. * * * It is these tenure rights based on statute or regulation that create property interests that cannot be withdrawn without a due process hearing. Employment contracts of public employes may create rights to continued employment over and above that provided by statute or regulation. *But such an employment contract, standing alone, does*

5. The District argues that this interpretation means that any teacher who works 135 days in his or her third year automatically attains permanent status, a result clearly not intended by the legislature. The District misreads the implications of my decision. The teacher must still be "reelected" to a fourth year after completion of three years for permanent status to attach. O.R.S. 342.815(5). As mentioned, "reelection" can occur by operation of law if the District fails to take action to *not* reelect a vulnerable employee.

6. In their reply memorandum, defendants suggest that if summary judgment is denied, the individual defendants should nonetheless be dismissed. The issue of the individual defendants' potential liability was not raised in defendants' opening memorandum or addressed in plaintiff's response. I am unable to decide this issue on the record before me.

*not create the kind of interest that triggers the requirement of due process hearing before the government withdraws the benefits of the contract,* i.e., breaches it. In such a situation, the public employe's remedies are measured by the law of contracts, not by constitutional law. *Papadopoulos,* 14 Or.App. at 168–69, 511 P.2d 854 (emphasis added.)

In *Brady, supra,* the Ninth Circuit interpreted *Papadopoulos* as "rul[ing] out the possibility that property interests for public employees in Oregon could arise solely from an implied or express contract of employment absent some underlying statute or regulation." 859 F.2d at 1549.

▪ Thus, even if plaintiff might be able to show an implied or express agreement that if she met certain performance objectives, she would be offered tenure, she may not assert a *property right* based on that agreement unless she can also show that it was made pursuant to an authorizing statute or regulation. *Brady,* 859 F.2d at 1549. Plaintiff has not satisfied that burden.

## II. *Plaintiff's Liberty Interest Claim*

▪ Plaintiff alleges in her complaint that the District's dismissal has stigmatized her professional and personal reputation and has foreclosed other employment opportunities in her profession, in violation of her right to liberty. Although defendants agree that dismissal of a public employee may implicate a protected liberty interest in reputation if the dismissal is for certain "stigmatizing" reasons involving dishonesty or moral turpitude, *see, e.g., Roley v. Pierce County Fire Protection District No. 4,* 869 F.2d 491, 495 (9th Cir.1989), they contend that the evidence in this case demonstrates that there was no "stigmata" of any kind associated with plaintiff's dismissal. Specifically, defendants assert that the decisions concerning plaintiff were formulated, discussed, and executed within the bounds of accepted protocol and the dismissal recommendation was made in an executive, not open, session, and that plaintiff's dismissal was based on particularized performance-based grounds, not on reasons relating to honesty or moral turpitude.

In opposition, plaintiff argues that two factors created a stigma that has precluded her from obtaining similar jobs in the Northwest. Plaintiff first points to the fact that the District chose to dismiss her rather simply to not renew her contract. Second, plaintiff points to a letter of recommendation written by defendant Squire in connection with plaintiff's application to another school district, in which Squire stated:

> Given a light vacancy and no prior political baggage, I would seek her [plaintiff's] services. *For reasons unrelated to skills appropriate to this position,* the candidate is not a viable applicant in our district. (Emphasis added.)

I am not persuaded that dismissal as opposed to nonrenewal creates any actionable "stigma." Moreover, while I agree with plaintiff that Squire's statement potentially *could be* construed as suggesting that plaintiff had been dismissed for problems related to dishonesty or moral turpitude, because this is a summary judgment proceeding, it was incumbent upon plaintiff to go beyond her pleadings and designate specific facts demonstrating an issue for trial. *Celotex, supra,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. The absence of any evidence in the record that some potential employer or other person construed Squire's statement as a "stigma" defeats plaintiff's claim. Accordingly, defendants' motion for summary judgment on plaintiff's liberty claim is GRANTED.

## CONCLUSION

Defendants' motion for summary judgment (# 22) is DENIED IN PART and GRANTED IN PART. Defendants' motion to strike (# 32) is DENIED as MOOT.