**BLACK & DECKER CORPORATION,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**No. Civ. WDQ–02–2070.**

*United States District Court,*
*D. Maryland.*

Oct. 22, 2004.

Herbert Odell, Philip Karter, Laura Gould Ferguson, Miller & Chevalier Chartered, Bala Cynwyd, PA, Harry Pogash, The Black & Decker Corporation, Towson, MD, John E. McCann, Jr., Miles and Stockbridge PC, Baltimore, MD, for Plaintiff.

Angelo A. Frattarelli, David Martin, Katinsky and Lindsey Cooper, United States Department of Justice, Tax Division, Washington, DC, for Defendant.

## REVISED MEMORANDUM OPINION AND ORDER

QUARLES, District Judge.

Black & Decker Corporation ("B & D") has sued the United States of America for a refund of over $57 million dollars in federal taxes, plus interest, which it contends were erroneously assessed and collected for tax years 1995 through 2000. Pending is B & D's motion for summary judgment on the complaint and the counterclaim. No hearing is necessary. Local Rule 105.6 (D.Md.). For the reasons discussed below, B & D's motion for summary judgment will be granted.

## BACKGROUND

In 1998, B & D sold three of its businesses. As a result of these sales, B & D generated significant capital gains. That same year, B & D created Black & Decker Healthcare Management Inc. ("BDHMI"). B & D transferred approximately $561 million dollars to BDHMI along with $560 million dollars in contingent employee healthcare claims in exchange for newly issued stock in BDHMI ("the BDHMI transaction"). B & D sold its stock in BDHMI to an independent third-party for $1 million dollars.

In December 2001, because it believed that its basis in the BDHMI stock was $561 million dollars, the value of the property it had transferred to BDHMI, B & D claimed approximately $560 million dollars in capital loss on the stock sale, which it reported on its 1998 federal tax return. B & D used a portion of the capital loss to offset its capital gains from selling the three businesses in 1998, and used the

remaining loss to offset gains in prior and future tax years.

Because the Service had not paid B & D's claims by June 2002, B & D filed suit for the refunds. In February 2004, following an audit of B & D by the Service, B & D's claims for refunds were denied, and the Service assessed additional taxes, penalties, and interest for tax years 1998 and 1999. The Service then filed a counter-claim for judgment on the taxes, penalties, and interest.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to summary judgment as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. Thus, "the judge must ask ... whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252, 106 S.Ct. 2505.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but the opponent must produce evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The

mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## ANALYSIS

■ The United States argues that the BDHMI transaction was a tax avoidance vehicle that must be disregarded for tax purposes. B & D counters that because the BDHMI transaction had economic substance, it must be acknowledged.

■ The Service may ignore sham transactions for tax purposes. *Hunt v. Commissioner*, 938 F.2d 466, 471 (4th Cir. 1991) (*citing Hines v. United States*, 912 F.2d 736, 739 (4th Cir.1990)). A sham transaction is designed solely to create tax benefits rather than to serve a legitimate business purpose. *Id.*

In the Fourth Circuit, a transaction will be treated as a sham if the court finds "that the taxpayer was motivated by no business purposes other than obtaining tax benefits in entering the transaction, and that the transaction has no economic substance because no reasonable possibility of profit exists." *Rice's Toyota World v. Commissioner*, 752 F.2d 89, 90 (4th Cir. 1985).

The business purpose inquiry examines the motives of the taxpayer in entering the transaction. *Id.* at 92. It is undisputed that tax avoidance was a motivating factor for B & D in conducting the BDHMI transaction, and for purposes of its motion for summary judgment, B & D concedes that tax avoidance was its sole motivation.

■ The second prong of the *Rice's Toyota* test examines the objective reasonableness of the transaction to determine whether it contained economic substance aside from tax benefits. *Hunt*, 938 F.2d at 471. A corporation and its transactions

are objectively reasonable, despite any tax-avoidance motive, so long as the corporation engages in bona fide economically-based business transactions. *N. Indiana Public Service Co. v. Commissioner,* 115 F.3d 506, 512 (7th Cir.1997); *Moline Properties v. Commissioner,* 319 U.S. 436, 438–39, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943); *Frank Lyon Co. v. United States,* 435 U.S. 561, 583–84, 98 S.Ct. 1291, 55 L.Ed.2d 550 (1978).

It is undisputed that BDHMI: (1) "assumed the responsibility for the management, servicing, and administration of plaintiff's employee and retiree health plans;"[1] (2) has considered and proposed numerous healthcare cost containment strategies since its inception in 1998, many of which have been implemented by B & D;[2] and (3) has always maintained salaried employees.[3] Moreover, as a result of the BDHMI transaction, BDHMI became responsible for paying the healthcare claims of B & D employees, and such claims are paid with BDHMI assets. Pl.'s Ex. 17 (Mark Hirschey Depo. at 414). The BDHMI transaction, therefore, had very real economic implications for every beneficiary of B & D's employee benefits program, as well as for the parties to the transaction.

■ The court may not ignore a transaction that has economic substance, even if the motive for the transaction is to avoid taxes. *Rice's Toyota,* 752 F.2d at 96. Accordingly, the BDHMI transaction cannot be disregarded as a sham.

Because it disregarded the BDHMI transaction, the Service concluded that B & D underpaid its taxes in 1998 and 1999. As a result, B & D was assessed additional taxes, penalties, and interest. Counterclaim ¶ 4. Because the BDHMI transaction

must be recognized, however, the United States' counterclaim for judgment on the additional taxes, penalties, and interest must fail.

Also pending are the parties' cross-motions for summary judgment on B & D's defenses to the United States' counterclaim. Because the United States' counterclaim is without merit, the cross-motions for summary judgment on B & D's defenses to it will be denied as moot.

---

1. Pl.'s Ex. 2 (United States' Responses to Plaintiff's First Request for Admissions ¶ 5).

2. *Id.* at ¶ 29.

3. *Id.* at ¶ 30.