NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1528, -1536

OCEAN INNOVATIONS, INC.
(formerly known as Jet Dock Licensing, Inc.)
and  JET DOCK SYSTEMS, INC.,

Plaintiffs-Cross Appellants,

v.

RICK ARCHER,

Defendant,

and

ZEPPELIN MARINE, INC.,

Defendant-Appellant.

—————————————

DECIDED:  August 19, 2005

—————————————

Before MICHEL, Chief Judge, SCHALL, and LINN, Circuit Judges.

SCHALL, Circuit Judge.

DECISION

Ocean Innovations, Inc. and Jet Dock Systems, Inc. (collectively "Jet Dock") sued

Rick Archer and Zeppelin Marine, Inc. ("Zeppelin") for infringement of U.S. Patent No.

5,682,833 ("the '833 patent") in the United States District Court for the Northern District

of Ohio. The district court granted summary judgment of infringement in favor of Jet Dock. Ocean Innovations, Inc. v. Archer, No. 5:98CV1515 (N.D. OH June 16, 2004) ("Summary Judgment Order"). Subsequently, after conducting a bench trial on the issue of damages, the court awarded Jet Dock a reasonable royalty and permanently enjoined Zeppelin from infringing the asserted claims. Zeppelin appeals, arguing that the district court erred when it granted summary judgment of infringement. Jet Dock cross-appeals, contending that the district court erred by awarding it a reasonable royalty rather than lost profits as the measure of damages. Because we conclude that the court erred in its construction of one of the '833 patent's disputed claim limitations, we reverse the judgment of infringement and remand the case for further proceedings.

DISCUSSION

I.

Jet Dock's '833 patent discloses a "floating drive-on dry dock" assembly for personal watercraft, and a method for its use. See '833 patent, abstract; id. col. 1, ll. 8-11. The patent contains seven claims: one independent method claim (claim 1) with three corresponding dependent claims, and one independent apparatus claim (claim 5) with two corresponding dependent claims. See id. col. 7, l. 28 - col. 8, l. 45. An embodiment of the device is shown in Figure 1 of the patent (below). The device's operation is shown in Figures 12-14 of the patent.



FIG. 1

The dock allows watercraft to be stored out of water, and also allows the users of the watercraft to get on or off the craft without getting into the water.

II.

Zeppelin describes its accused product, the Sport Port Ultra dock ("Ultra"), with reference to U.S. Patent No. 5,795,098. That patent also shows a dock for storing watercraft so that the hull of the craft is above the waterline when it is on the dock.



FIG. 1

Jet Dock sued Zeppelin for infringement of method claims 1 and 4 of the '833 patent.[1] After construing the asserted claims, the district court granted summary judgment of infringement in favor of Jet Dock. Thereafter, the court held a bench trial to

---

[1] Although Jet Dock's Second Amended Complaint does not reference any particular patent claims, claims 1 and 4 were at issue on summary judgment and are presently on appeal.

determine damages for infringement. After determining that Jet Dock was not entitled to lost profits damages, the court calculated a reasonable royalty and entered judgment in favor Jet Dock for approximately $455,000. Zeppelin appeals the judgment of infringement. Jet Dock cross-appeals the district court's damages determination. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

III.

On appeal, Zeppelin argues that the district court erred in granting summary judgment of infringement in favor of Jet Dock. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

"Determining infringement requires two steps. First, the claim must be properly construed to determine its scope and meaning." Boss Control, Inc. v. Bombardier, Inc., 410 F.3d 1372, 1376 (Fed. Cir. 2005) (citations omitted). Claim construction presents an issue of law which we review de novo. Markman v. Westview Instruments, Inc., 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc), aff'd 517 U.S. 370 (1996). "Second, the claim as properly construed must be compared to the accused device or process." Boss Control, 410 F.3d at 1376. Infringement presents an issue of fact. Id.

On appeal Zeppelin contends that the district court erred in construing two limitations of the asserted method claims. Asserted independent claim 1 provides in pertinent part as follows:

1. A method of placing a floating craft having a hull with an upwardly curved bow onto a dry dock comprising the steps of:

selecting a plurality of **floatation units** from a first group of floatation units having a first buoyancy and a second group having a second buoyancy . . . .

assembling the selected units to form a dock having an axial extent defining a craft-receiving surface which is above the surface of the water when the dock does not have a craft on it, using **flexible joints between the units** which permit adjacent units to flex downwardly with respect to each other upon the imposition of a downward load,

driving the craft up and onto the dock . . . .

'833 patent, col. 7, l. 28 - col. 8, l. 6.[2]

Zeppelin challenges the district court's construction of the term "flexible joints between the units."  The court construed the term to mean "a point or position in the interval or position separating the floatation units of the dock, which point or position is capable of bending or flexing."  Zeppelin argues that the district court erred in its construction because the term "joint" in the claims must refer to a tangible object, not merely a "conceptual" "point."  According to Zeppelin, a "point" cannot be characterized as "capable of bending or flexing."  Zeppelin argues that the district court "mechanically combined" definitions of the claim terms, and should have excluded a point from the possible definitions of "joint."  Zeppelin proposes that the term "flexible joints between the units" should be construed to mean "a configuration or component connecting the flotation units of the dock, which configuration or component is capable of bending or flexing."

---

[2] The disputed limitations are emphasized.  The other asserted claim is method claim 4, which depends from claim 1 and contains additional limitations not relevant to resolving the present dispute.

Jet Dock defends the district court's claim construction, analogizing to the human body: "an elbow is a flexible joint between [the] forearm and upper arm, yet there is no component that can be considered apart from the bones [that] the joint connects." (Br. of Appellee, at 31.) Jet Dock further argues that the district court's construction is consistent with the specification, because the tabs that connect the floatation units help form the "flexible joint" but are not disclosed as components separate and apart from the floatation units themselves. See '833 patent, col. 1, l. 67-col. 2, l. 1.

We see no error in the district court's construction of "flexible joints between the units." We think that Zeppelin's proposed construction is incorrect because the "flexibility" referred to in the '833 patent is not that the material forming the joints itself is flexible, but rather that the joints permit the floatation units to flex and bend relative to each other. This is clearly recited in the claim language: to "permit adjacent units to flex downwardly with respect to each other upon the imposition of a downward load." Id. col. 7, ll. 43-45 (claim 1). Consistent with this notion, the specification teaches that "[w]hen joined together the flotation units 12 and 14 show some flexibility relative to one another." Id. col. 4, ll. 23-24.

Zeppelin also challenges the district court's construction of the term "floatation units." The court construed the term to mean "an individual structural constituent of a whole (i.e., the dry dock claimed in the '833 patent) which is buoyed on water." The court also determined that the "floatation units" must be "airtight" but not necessarily "hollow." Zeppelin argues that the claimed "floatation units" must be hollow as well as airtight.

Jet Dock agrees that the claimed "floatation units" are properly construed to be "airtight." It, argues, however, that construing the claims as requiring the units to also be "hollow" imports a limitation into the claims. According to Jet Dock, "floatation units" should be construed broadly because the claims are not limited to the single embodiment that is disclosed in the '833 patent's specification.

In Phillips v. AWH Corp., Nos. 03-1269, -1286, __ F.3d __ (Fed. Cir. 2005) (en banc), we noted that "the line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms." Id. slip op. at 29. We further noted that, "[i]n the end, there will still remain some cases in which it will be hard to determine whether a person of skill in the art would understand the embodiments to define the outer limits of the claim term or merely be exemplary in nature." Id. slip op. at 30. However, we stated that "we nonetheless believe that attempting to resolve [the] problem in the context of the particular patent is likely to capture the scope of the actual invention more accurately than either strictly limiting the scope of the claims to the embodiments disclosed in the specification or divorcing the claim language from the specification." Id. slip op. at 30 (emphasis added).

With those principles in mind, we turn to the term "floatation units" in the '833 patent. Doing so, we conclude that one skilled in the art would understand the term to be referring to units that are hollow as well as airtight. The very first sentence of the patent characterizes the overall invention of the '833 patent as a "floating, drive-on dry dock assembly for small craft [that] is assembled from two kinds of hollow floatation

units." '833 patent, abstract (emphasis added). This communicates to one skilled in the art that a characteristic of a "floatation unit" in the invention of the '833 patent is that it is hollow.

Continuing, the '833 patent's specification describes the claimed floatation units with reference to prior art devices that also contain hollow units. The "Background of the Invention" section of the patent describes the prior art with reference to U.S. Pat. Nos. 3,824,664 and 4,603,962. According to the '833 patent's specification, "[t]hese patents describe hollow cubical units[.]" '833 patent, col. 1, ll. 21-24 (emphasis added). In particular, the prior art units were "provided with bungholes so that the units could be partially flooded to lower the water line of some or all of the units." Id. col. 1, ll. 28-32.

Most importantly, the "Summary of the Invention" section of the patent states: The dock is "assembled from a combination of tall and short, hollow, air-tight floatation units." Id. col 1, ll. 66-67 (emphasis added). Finally, in the preferred embodiment "all of the floatation units 12a-l and 14a-g are hollow and air tight." Id. col. 3, ll. 27-28 (emphasis added). In the preferred embodiment, the tall floatation units (12a-l) are described as being "substantially similar to that shown in U.S. Pat. Nos. 3,824,644 and 4,604, 962[.]" '833 patent, col. 3, ll. 31-34. These are the same two patents previously described in the Background of the Invention section as containing "hollow" units that can be flooded with water. See id. col. 1, ll. 22-24.

We think that one skilled in the art reading the '833 patent claims, in light of the '833 patents' disclosure, would understand that the "floatation units" in the claimed invention are hollow. See C.R. Bard, Inc. v. United States Surgical Corp., 388 F.3d 858, 863-864 (Fed. Cir. 2004) (where a patentee had "globally" defined a "plug" for an

implantable prosthesis as having a pleated surface, the term "plug" was so construed); Scimed Life Sys. v. Adv. Cardiovascular Sys., Inc., 242 F.3d 1337, 1343 (Fed. Cir. 2001) ("[T]he characterization of the coaxial configuration as 'part of the present invention' is strong evidence that the claims should not be read to encompass the opposite structure."). Jet Dock's argument to the contrary presumes the conclusion that it seeks. To assert that "hollow" is improperly importing a limitation into "floatation units" is to presume that the "floatation units," as claimed in the '833 patent, are not characteristically hollow. That argument, however, presumes to know the meaning of "floatation units" to one skilled in the art—which is the very issue at hand. We do not think that to construe the "floatation units" as hollow is importing a limitation into the claims when the specification makes clear that hollowness is an inherent characteristic of the "floatation units" in the claimed invention.

In sum, we construe claim 1 of the '833 patent as directed to floatation units that are airtight and hollow.

Having altered the district court's construction of "floatation units," we reverse the judgment in favor of Jet Dock and remand for further proceedings on the issue of infringement. See Home Diagnostics, Inc. v. LifeScan, Inc., 381 F.3d 1352, 1360 (Fed. Cir. 2004) (remanding for new infringement determination in light of altered claim construction); NeoMagic Corp. v. Trident Microsystems, Inc., 287 F.3d 1062, 1075 (Fed. Cir. 2002) (same).[3] Because we reverse the judgment of infringement in favor of Jet Dock, we do not need to reach Jet Dock's cross-appeal with respect to damages.

---

[3] We reject Jet Dock's argument that Zeppelin admitted infringement by arguing that the '833 patent is invalid under 35 U.S.C. § 102(g). Before the district court, Zeppelin's position was that the Ultra did not infringe, but that if the Ultra was

For the foregoing reasons, we reverse the judgment of infringement in favor of Jet Dock. The case is remanded to the district court for further proceedings consistent with this opinion.

Each party shall bear its own costs.

---

(Cont'd. . . .)

found to infringe, then the '833 patent is invalid under section 102(g) on the basis of prior invention of the Ultra. There is nothing inconsistent in advancing this alternative theory for non-liability. This was exactly the position taken by the accused infringers in Vanmoor v. Wal-Mart Stores, Inc., 201 F.3d 1363, 1366 (Fed. Cir. 2000), and in Evans Cooling Systems, Inc. v. General Motors, Inc., 125 F.3d 1448, 1451 (Fed. Cir. 1997), although in those cases the defendant argued under section 102(b) rather than section 102(g).